The next argument in the calendar is 21-707, United States v. Farooq I've thought a lot about how to start this argument, and given that the city commenced its brief with a sentence that had absolutely no relationship to what was going on in this case, I want to be clear that this is not a case about how to punish somebody who, in his home, or, they allege, without any support at work, viewed pornography. That's not what this is about. The city led with that sentence because there's no merit to their position in this case. This is a case about an employee of the city who worked actual hours. He worked the hours. This is not a bonus. It's not a benefit. He worked 457 hours. Instead of taking the pay, he put it in a comp program so that he could use it for paid time off later. He wasn't paid that money. That's what this case is mostly about. He wasn't paid that money, but he was entitled to the money because the practice of the D.D.C. was to pay it out upon somebody's termination. Not just the practice. It's in their employment manual that is fully set forth in the record. It wasn't just a practice. Right. It's in the manual. There's an expiration on it, but you're saying the agency had waived that expiration that's in the manual. I suppose there must be some number of hours that are not expired, even if that were an enforceable provision of the expiration. Right, but the complaint would now deal with, on that, a motion to dismiss. The complaint said that he had been advised that the time would not expire. He could use it even when he left the agency. This is a motion to dismiss. There is a record, fortunately, unfortunately, which the city keeps bringing into the motion to dismiss, where, in fact, the HR director said that people were allowed to maintain the money until they left the agency, whether it was retirement, leaving, fired, whatever. The case has two, there were two types of claims. One was that it violated the agency pronouncement in its own book, which we assert was enacted pursuant to, as we said, not just pursuant to one city regulation, but pursuant to a statute that was the state civil service statute, which allowed the city to come up with personal rules and regulations, which then, the agency then created its own... The New York City Administrative Code says hours set by statute, and you're saying that this is essentially set by statute because the manual is authorized by statute. The manual is authorized by statute, and I believe it's paragraph 17 of the complaint. We describe how this statute authorized this regulation, which authorized the agency to do what it did. And is that what the New York City Administrative Code means when it says set by statute? Is that what it means set by statute? Well, the district court here thought that set by statute just means that a statute has to lay out the hours requirements, right? I believe that the Administrative Code... The statute authorizes the issuance of a regulation or a manual, and that still would be covered. The civil service law allowed the agency, allowed the city agency to create a... And the personal rules and regulations, which were pursuant to state law, allowed the agency to develop a pay program, which it... So, it goes back to state law authorizing the New York City to create personal rules and regulations. And I think that's probably how most agencies set their personnel rules. There's some general authorization, and they set their own. I can't imagine the New York City Council setting overtime rates. No, New York City Council hasn't. They haven't set it because it... A set of citywide regulations, which is enacted pursuant to state law, that they're allowed to do. And I don't think there was any assertion here that, in fact, that was the policy, the practice, the procedure, a very detailed procedure shown in paychecks, pay stubs, even his last pay stub showed 457 hours of comp time. This was not just a gift. It was not just someone acting ultra-virus. This was a policy that has existed for many, many, many, many, many years. Even if it wasn't, pursuant to the Nakahata case, which I found in researching this, it said that there could also be a claim for breach of oral contract. There could also be a claim for unjust enrichment. So we included those claims in the complaint. And that's where the district court, the magistrate relied on the Finley case to say, you can't bring such a claim except within four months of when you're deprived of the pay. The city concedes, because the Finley case didn't say that, which was in this court. The city concedes in its brief, they say on page... And it's not clear that it applies in a case like this where you're not conceding. They said, at best, it's unclear. At best, it's unclear whether it applies. If something at best is unclear, it certainly shouldn't be the law that anybody relies on in determining what they're talking about. Well, we have to rely on what's unclear, but I guess your argument would be, in this case, your client is not seeking reinstatement. He's just seeking back pay or compensation for hours he actually worked. It's not really just a reinstatement. Exactly. And there is a New York State Court of Appeals decision in Gerber that says very clearly that where a claim for wages is not accompanied by a request for reinstatement, that it can be brought as a plenary action. Plain as day, that's what Gerber says, and that's what we asserted in the court below, and the court ruled otherwise. Can I ask just a little incident about the FLSA claim? So your client said in his deposition that he built a tracking system from the ground up. Doesn't that mean he had a lot of discretion about how it should be put together? That section, the regulations in the FLSA that create the policymaking decision, talk about an employee whose primary duty includes exercise of discretion and independent judgment with respect to matters of significance. He took data, and the city didn't put his supervisor or his next person up the chain's testimony into evidence. He took data. He took an Excel program. He worked with IT to massage that program to give the reports that the city wanted. That's not an exercise of discretion. He was not a policymaker. He was an analyst. I represent thousands of analysts in this city. So the regulations that talk about what's directly related to management or general business operations say, work directly related to management or general business operations include, but is not limited to, work in functional areas such as tax, finance, accounting, budgeting, auditing, insurance, quality control, purchasing, procurement, advertising, all these things. Quality control and so on seems like it's applicable here. So it's not just people who are managing the company. It's people who are doing programmatic work that aids in the management of the company. But then every analyst... In fact, the regulations, I think, also say at one point that an administrative assistant to somebody who manages the company, if that person has some discretion, would also qualify. So it doesn't have to be a high-ranking person, does it? It has to be somebody who is making decisions on policy. If that applied to an analyst, he was an analyst. As I said, I represent thousands of analysts in this city who have to input data, decide which data to put in, they have to decide how the program should be massaged so that it gives out the report that their higher-up wants to see, how many homes have we built today, what's the difference between... I represent people in the subway system. How many people are riding the train now as opposed to one year ago, crime levels, whatever it is, they have to take the data and put it in. And they have to figure out how to put it in so that it creates a report that answers the question then. If that makes you a policymaker, then anyone with an analyst title in the city of New York, and there are 7,000 or 8,000 of them, would become not eligible for overtime. So your argument is that he just didn't exercise discretion. Your argument is that he didn't even engage in work directly related to management or general assistance operations. Actually, our argument here is this is a summary judgment decision, and there are factual arguments that can be made on both sides, and in the Olaceno and many other decisions that this court has, if the facts are viewed most favorably to the plaintiff, this should have been a trial, not a determination. Are they factual arguments? I took you just to be talking about basically a legal dispute. So you're saying that, well, he is doing, he is entering the data and manipulating the spreadsheets in order to generate certain reports. And you're saying that kind of work doesn't qualify as related to management or business operations. I'm saying that if... Like, is it disputed the kind of work he's doing? Yes, there's a dispute as to the extent of his authority, the extent of his discretion. Okay, the dispute about the extent of his discretion. So I guess just in terms of the kind of work he's doing, he is designing a system where you can input the data... No, he didn't design the system. He worked with IT. That's what it says in his supervisor as well, Mr. Hock. He worked with IT to take an accrued Excel program and create whatever he needed, you know, columns he needed, and I don't do this stuff, he needed to come out with a report. He worked with somebody, and then he generated the reports, and if somebody would say, can we see what would happen if you added another thousand homes to the project? Right, he figured out how to write the data to generate the reports. In Excel. He didn't write Excel. He didn't write the program. He didn't make the program, but I mean, I take it it's a relatively complicated system of Excel workbooks that interact with each other. So I understand. He might argue about whether that is making a program or not, but what he is doing is he is coming up with some kind of system, which is in Excel, where you can input the data and generate these reports based on the interests of the policy maker. And there was different testimony. His direct supervisor, Mr. Hock, the next guy up the chain, Mr. Cain, basically talked about him as somebody who put the data in that we told them to put in and produced the reports that we told them to produce. There was other testimony that went both ways. Ms. Flaherty, I believe, who was the next person up the chain, you know about how important his reports were. Okay, so we know the nature of the work is making these reports, but you're saying the nature of his discretion is a factual dispute. So it might be that he's just doing the ministerial thing, which is inputting the data that people tell him to input, or he might be doing something that involves more discretion about how the spreadsheets interact and how the data interacts to generate a report. Right? That's a dispute. There's a factual dispute, and the regs talk about it. So you're saying that if he made a lot of inferences in his favor, it could be that he was just a data inputter and he would just input data that people told him to input and didn't have any discretion over what it looked like. Which is what his immediate boss said in his deposition, which the city decided not to even cite it. They cited testimony of someone two levels up the chain. His direct supervisor basically characterized him as someone who inputted data, what we told him to do. Now, didn't he say in his deposition that there was not a system, that he put together this network of spreadsheets in order to generate reports? That as a computer, someone who knew how to work with computer programs, with Excel, he put together the spreadsheets that he was being asked to produce. But as I said, his boss describes him in a far less grandiose way than he describes himself. He added some grandiosity. And a lot of what the district court relied on was his resume. He put on his resume that he did some of this stuff. It was clearly a factual issue. It shouldn't have been decided on a motion for summary judgment. This court has many decisions. I cited Olaceno because I argued it here in this court. It was a wonderful decision. Where the court said, if you don't view the evidence most favorably to the plaintiff or the non-move-ins, that it's inappropriate. If there's a factual dispute, that the court should send it to trial and not. There are ways of looking at this evidence that would not fit him into that slot. How can I get that argument? Now, is it in your view undisputed that that was his primary role at the DTC? His only role, that was all he did. And then he took the reports and went to meetings and people had questions about the reports. But that was his job. He was an analyst. That's what analysts do. Thank you. Thank you, counsel. Good morning. May it please the court, Lorenzo DeSilvio on behalf of the city. So in this case, there's no dispute that DTC did not pay out the overtime that Schwartz chose to bank at comp time rather than taking it as straight pay on his paycheck. But the problem for Schwartz is this. He's looking for a legal means to remedy the wrong he's alleged, but he hasn't identified a cognizable one. I'll begin with the state law claims because that's where Mr. Schwartz's counsel started. And even if the court reaches them, because the city submits that you should reach the FLSA claim first. It's the only reason we're in federal court. It's a fact-rich claim. It's the only claim that went to discovery. Even if the court reaches the state law claims, they still suffer. I'm suggesting that the court could decline to exercise supplemental jurisdiction once the only reason that went to court is false. I understand, Your Honor. And if you want to address the claim, they still fail on the merits. Because the ad code claim, as you pointed out, Judge Menasche, the legislature could have written a rule saying anyone denied overtime provided anyone who has to work beyond their work week as set by statute or contract could have said work week set by statute. But I mean, is it not, it seems that it is not an impossible reading to say that if a statute authorizes the agency to set its policies for overtime that that is still overtime error set by statute because it's authorized by statute. Usually regulations and other sub-statutory documents that come from agencies that are authorized by statute are elaborations of the statutory requirements. Do we know how the state courts apply this regulation? It seems like we don't have a lot of authority for that. We don't, and Schwartz has offered no argument on that front. It does seem to me that probably the way most government agencies work is a version of this. If there's a statute that authorizes the agencies to adopt workforce policies and they do it through some kind of guidance or regulation. Sure, and if they said the work week is set by something authorized by statute, that would be a different statute than the one we have here. If it's set by statute, we should understand that it's an old rule. Yes, work week set by. Are there any statutes? First of all, when the city council passes a statute, do we call it a statute or do we call it an ordinance? I believe we call it a statute, and then regulations would be the level below that. Okay, so have the city council passed any statutes that set the work week for city employees at any of the agencies? I believe that there are such statutes. I'm not aware of such statutes specifically applicable to the city of New York and its workforce, but here our argument is a textual one, which is the legislature used the language that it uses. It must have meant not to include something authorized by statute, but rather the work week has to be set by statute. And the two common law claims fail on the basis of the CBA, and there's two reasons why this case is distinguishable from the Nakahata case, which Schwartz relies on heavily on reply, likely because he has no answer as to why he can proceed with those claims if the CBA applies them. First of all, unlike the claim in Nakahata, his claim for payment of comp time is grounded in his CBA, as Kenny, one of his supervisors, testified to at 538 of the record. This is something that is a creature of contract. It only exists in the CBA, so thus his complaint necessarily relies on this document, which he hasn't attached. But there's a second reason why Nakahata. I'm sorry, the comp time only exists in the CBA? It's from the CBA that exists. It's a contractual right. It's not something statutory leaving aside the SLSA. But it is also in the manual that governs employees at the CDC, right? That's correct. There were no CBAs. They just hadn't concluded the CBA, but they did have that manual, which still would have a contractual claim against the CDC. That's right. But the CBA, the reason why you can look at the CBA here is not only because it's critical to the cause of action here, the contract-based causes of action, but also because in Nakahata the court said, we just can't do this on a motion to dismiss, but you can convert it to a motion for summary judgment. And here we've had summary judgment, and contrary to the tune that Schwartz sings on his reply brief, on page 595 of the appendix, the city said in its 56.1 statement, here's the CBA that covers you. It's dated 1994 to 2001. It's Exhibit K or J to the Declarations Board of Summary Judgment. Schwartz said, admit it. He never said that that wasn't the agreement. And even if this panel has any concerns, that agreement in 2017 somehow wouldn't have agreements procedure, wouldn't address comp time, or wouldn't say you have to use it within four months, you can take judicial notice of the up to 2021 agreements, which are available on the city's website, and multiple labor unions if you just Google city-wide agreements. In terms of the dismissal of the motion to dismiss, that's right. That's right. I don't think you should, because we are in the land where without conversion into a motion for summary judgment, you can take cognizance of something that necessarily underpins his contract claim. That's the CBA. And second of all, it's, it's a bit of a willful. It doesn't necessarily undermine his contract claim. I understand that since there is a CBA, it would affect the claim, but in the absence of a CBA, it could be based on the policies available under the manual of CDC, right? It could be, but he is relying on the CBA because that is the highest level of contract that would govern here. Would Trump's the employment manual because it's city-wide and it does comprehensively address. Overtime rights in the terms of comp time. It has a grievance procedure that outlines, and it says that you have to take it within four months. I believe that Schwartz has a better reading that he was not required to a draft, but we pushed back on his contention that even though he filed two, two years after he got his last paycheck, evidently the four month clock didn't even start running. We don't think a reasonably diligent plaintiff. That's why you're, you're. That's right. And maybe it's short. Require them to do what? Revenge. Yes. We think that. Yes. Exhaust contractual grievance remedies. And we also have a substantive argument at which he can't have a claim from morally modifying economics. We think that he can't have a contract or for unjust enrichment. When a valid enforceable contract comprehensively governs the subject matter. Of the dispute among the parties. As is the case here. And if the panel has any questions on the FLSA plan, it's Schwartz's own sworn testimony. That clearly establishes that he's exempt under one or more grounds. And that testimony was as clear as where his. Unexplained direct contradictions that he offered in opposition to summary judgment. Trying to just be nearly every materialist. And judgment. Actually, you were asking some questions, you know, sort of characterizing Schwartz's argument as being, well, he was just doing data entry. But Schwartz's testimony tells a different story. He was the one who introduced the phrase. I was the lead project analyst. And he explained it because he frequently met with officials. He directly advised the DVC assistant commissioner almost daily. He prepared PowerPoints for her. Presentations for her that she would deliver to other high level stakeholders overseeing the process. If he was just in data entry park, it's hard to believe that you agree that if he was just doing data entry, he would not be exempt. But if he has discretion over how to do the reports and present them and so on, then he's exempt. Is that the dispute? I think that's a correct dichotomy between the exercise. If you are an accountant at the, at the business, you are not. But if you're the director of accounting and you can decide how, how all the accounting procedures are done, then you're exempt. Right? Discretion over how you do something that is related to management. Yeah, I think the discretion, I actually think the accountant might be exempt too. And that's where Schwartz finds himself because contrary to the accountant, who's just doing. I think so because it's about, it's non-ministerial. It involves some discretion and judgment. And that's what Schwartz testified to here. Because contrary to what counsel said, he says directly, I designed several Excel workbooks. He used those Excel workbooks to compile a report with 20 different metrics. It took 30 to 60 minutes sometimes to run that report. This idea that it's just entering one or two numbers and doesn't involve some discretion in the presentation of that. And the fact that he himself said, we went from crude Excel spreadsheets to sophisticated data. I came out. It talks about discretion and independent judgment. And you're saying, well, even if the discretion just involves how to present the results of some data calculation. Data design, data analysis, data presentation. And that's what he testified to there. So even an accountant who's just inputting numbers, and you might think of it as ministerial, because he has to present the numbers to somebody, he has discretion. I think he has discretion because the way that you calculate numbers, there's different ways. There's accounting methodology. Who doesn't exercise discretion in independent judgment? There's separate requirements, right? So you have to be directly related to management or general business operations, but then also have discretionary independent judgment. So someone's primary duty might not be just that exercise of discretion in independent judgment. They might not work on matters of significance. They might be below the salary threshold, and they might be doing a purely manual labor job as opposed to an office job. And all those things are in a different category than in STEM. No, I know. I understand that you're going to be doing a manual labor job as opposed to math. I'm just saying that there must be some category of people who are doing work that's directly related to management or general business operations who do not exercise discretionary independent judgment. Yes. I think if there were no such category, then the thing would be redundant. So think about maybe partners back in the day when they would ask an assistant to type up their brief. They think that would be something purely ministerial. Well, in fact, the regulations have an example of somebody who's an executive assistant to a manager, and they only are exempt if they're given discretionary responsibilities. But not if they just act as an assistant and schedule things. Yeah, I think that's correct, and that's what Schwartz's testimony bears out. And the last point I'd just like to make. His testimony bears it out. Why? Because he's doing data design and data presentation. That's right. And I understand the characterization that he made himself sound more important, but his supervisors regarded him as more of a functionary. That's a red herring, because Schwartz doesn't actually point to any testimony from either Flaherty, Tenney, or Haik, the three people who worked with him that contradicts anything he said while questioned under oath at his deposition by the city's attorney. Rather, each of them actually spoke to the critical work that they relied on Schwartz for. Flaherty said his development of various analysis tools that helped DDC further understand what some of the key risks and challenges were was critical. Tenney said that Schwartz was the point person on building out the system to track very complicated information with respect to 1500 homes. Haik said that Schwartz analyzed data and created meaningful reports for a multi-billion dollar program to chart its progress and see how it was doing. This is just not the stuff of someone who was doing ministerial data entry and he clearly, you know, spoke with pride about the discretion independent judgment that he worked with when he was questioned under oath. And now he wants to deny all that when he's faced with a summary judgment motion. This court should affirm across the board. Thank you. Your Honor, the CBA argument is another red herring, because if you look at the complaint, the complaint doesn't mention the CBA, doesn't say it arises under contract.    You won't find the word collective bargaining agreement, contractual rights one time in there. It wasn't even clear it arose under whatever contract he was working under, but it's not in there. It's not alleged in the motion to dismiss. There was no contract referred to. There was no contact referred to in the pleadings that the court could look at. There was no argument made about collective bargaining agreement in, in the, in the, in the district court by the city when they made their motion, they raised it for the first time on appeal. They raised it for the first time on, in their opposition brief. That's the first time the collective bargaining agreement even came into play. The collective bargaining agreement did come up in the course of the deposition of the, and was included in the record in the summary judgment complaint, the summary judgment on the FLSA. Okay. We have that argument. I guess I'm more interested in the other one. So the point about the administrative code saying it has to be set by statute, you know, the city says, well, the city council could have written any hours authorized by statute. Right. So why shouldn't we read it to be limited to hours that are set directly in the statute? Because, because the, the, the, the, the state law allows the claim isn't under the administrative code. This claim is, is, is, is, is what was derived from state law, which is the personal rules and regulations, which we also refer to in the complaint. And which, which, if the city council wanted to say, well, we only think that this regulation, this statute should apply when the hours are set by statute. And if they're set by some other means, then we don't want to enforce them in this way. I mean, the city council could do that. Right. The city council could do that. Yes. There, there is no state law for public about public employees and when they get over time, there isn't, I've been through this many times, but there are regulations, their personnel rules. There are practices, there are manuals. And in fact, most city, most state and city employees work a 35 hour week, not a 40 hour week. They don't get time and a half between 35 and 40 to get straight time. And then here we're not even talking about banking. We're not talking about earning overtime. We're talking about he worked 39 hours one week and he didn't. Before we run out of time, I also want you to address this question about having discretion. So in fact, I think it's hard to dispute that he has some discretion over how the data analysis is done and how it's presented in reports and so on. Unless. Is that not enough discretion to say that he exercises some independent discretion and judgment? Well, we do cite to Hawk and Kenny's testimony. Mr. Hawk said he collects info from the information from the field, puts data into one big report, attends meetings and attends meetings to present the reports. So he's asked, we would like to know XYZ. They give him a bunch of categories. We want the information collected, how much we're spending on each building, what's the average, how much for concrete, how much for gravel, how much for, for electricians, whatever it is, they're rebuilding houses. That's what it was about. We want this information put in their report and we want to be able to see how all of those different things are being affected by our program. Right. So that, I mean, just that request isn't that called for the exercise of some discretion. So he says, I want a report that shows me all of these inputs and how much is being spent on all of these things across all our activities around the city. Figure out how to present that data to the people who want to see the reports. He has to figure out. This is about decision makers. I mean, otherwise the person that works in the token booth in the subway, if they decide to let somebody in, you know, without a, is that, are they then discretionary, making discretionary decisions about, and then they're excluded? I don't know if taking the tokens is directly related to management or general business operations, but accounting, auditing, quality control, advertising, like all of these things that seem similar to what he's doing are not specifically enumerated as directly related to management or general business operations. But he's not making the decisions about what to do. If you issued a decision that said that here, you would exclude 90% of the workforce in the city from FLSA coverage. Or 90% of the workforce in the country, because people have discretion. They say, a boss says, do this job. And they have to decide, should I go this route or that route? Should I go to this street first or that street first? If they make a decision, does that make them a decision maker over something? Even the secretary that counsel refers to might decide, should I footnote it this way or that way? Is that a decision? That's what the boss gives them a brief and says. Well, in fact, the regulations in 29 CFR 541-3 says, as an example of somebody who qualifies for the administrative exception, given an executive assistant or administrative assistant to a business owner or senior executive of a large business, generally meets the duties requirements for the administrative exception of such an employee without specific instructions or prescribed procedures, has the delegated authority required in matters of significance. I understand that's a little vague. But it does mean that an executive assistant, as long as they're doing some kind of delegated authority, meets the exception. So it's not about somebody being higher up in the hierarchy. It's about the nature of the work that they do. But he's not an executive assistant. The first part of it, he was called a project management intern. And the second part, he got a raise to $65,000, and he was called data analyst. He wasn't an executive assistant to anyone. And I do want to just come back to this CBA claim, which we spent a lot of time on. And in this court's decision in Nakahata, the same as the Presbyterian health care system, this court said, we do not consider matters outside the pleadings in deciding a motion to dismiss. There was a CBA claim made here. They say, rather, the matter outside the pleadings is offered on a motion for summary judgment. As indicated by the word shall, a conversion, you have to convert it to a summary judgment. It wasn't raised. It wasn't in the record. It wasn't considered. It wasn't raised by the city. And for them to raise it on appeal is entirely inappropriate. And it was never asserted. And this court has said, you can't throw a CBA claim into a wait. That was a wage and hour. It was an SLSA case. You can't throw that into the mix when you didn't do it on the motion to dismiss. So why the city is grounding itself in that now is only because there's no merit to its position. Because even if we can't establish, judge, even if we don't have the administrative, if the administrative code somehow doesn't apply and what DDC was doing was entirely illegal or was entirely not authorized by law and they have 10,000 employees and they're doing something not authorized by law, we do have a claim for oral contract. We do have a claim for unjust enrichment, which this court in Nakahata said, if we don't have a good statutory claim, you have a claim. You remanded for consideration of those common law claims in that particular case. And the city's argument below and the decisions below were you have to bring those by Article 78 within four months of the last time you were in pain. And the city has conceded here that that ruling was improper. So whether or not the administrative code allowed it or state law allowed it, and we have claims here. We didn't just bring a claim under the personnel rules and regulations. We brought a quantum merit. We brought an unjust enrichment. We brought an oral contract claim. And those were dismissed separately on this ruling saying that thinly applies and you have to have filed an Article 78. The city has conceded that that's wrong, which is why they brought in the CBA claim, the CBA assertion, which never came up. Because they're conceding that the court decision below on those three causes of action, those three state law common law causes of action, was wrong. And just on that basis alone, it should be remanded to the district court to, frankly, not just to reconsider the motion to dismiss, but to grant judgment on the pleading. Thank you very much. Thank you, counsel. The last case on the calendar for today is on submission. So that concludes the business for today. I'll ask the board of deputies to adjourn. Board of Senators.